UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                     **Plaintiff**<br><br>vs.<br><br>**CONROY DAWSON**<br><br>                     **Defendant** | **CIVIL NO.** |

## COMPLAINT

Comes now the United States of America, Plaintiff, by its specially appointed counsel KML Law Group, P.C., represents as follows:

1. This action is brought by the United States of America, against Defendant Conroy Dawson ("Defendant") pursuant to 47 U.S.C. § 504(a) to enforce a Forfeiture Order released by the Federal Communications Commission ("FCC" or "Commission") on June 19, 2017, pursuant to 47 U.S.C. § 503(b).

## JURISDICTION AND VENUE

2. This action is brought by the United States of America, with jurisdiction provided by 28 U.S.C. §§ 1331, 1345 and 1355 and 47 U.S.C. § 504(a).

3. Venue is proper pursuant to 28 U.S.C. §§ 1355(b), 1391(b), 1395(a) and 47 U.S.C. § 504(a), because the acts or omissions giving rise to this forfeiture action occurred in Paterson, New Jersey.

## PARTIES

4. Plaintiff is the United States of America.

5. Defendant is a resident of Hackensack, New Jersey, which is located in the District of New Jersey.

## STATUTORY AND REGULATORY BACKGROUND

6. The FCC is an independent federal regulatory agency created by Congress to regulate intrastate, interstate, and foreign wire and radio communications pursuant to the Communications Act of 1934, as amended (the Act), 47 U.S.C. §§ 151 *et seq*.

7. Section 301 of the Communications Act of 1934, as amended (the "Act"), 47 U.S.C. § 301, prohibits the operation of any apparatus for the transmission of energy, communications, or signals by radio from one place in the United States, except under and in accordance with the Act and with a license for that purpose granted under the provisions of the Act.

8. Pursuant to section 15.239 of the FCC's rules, 47 C.F.R. § 15.239, the intentional transmission of radio frequency signals in the 88-108 MHz band is permitted without an individual license only if the field strength of the signals does not exceed 250 microvolts per meter ("µV/m"), at a distance of three meters from the transmitting antenna. Otherwise, the transmission of the signals must be made pursuant to an individual license granted by the FCC under 47 U.S.C. § 301.

9. Pursuant to section 503(b) of the Act, 47 U.S.C. § 503(b), any person whom the FCC determines to have willfully or repeatedly failed to comply with the provisions of Chapter 5, Title 47 of the United States Code (including 47 U.S.C. § 301) or any rule, regulation or order issued by the FCC shall be liable to the United States for a forfeiture penalty.

10. Section 312(f)(1) of the Act, which applies to violations for which forfeitures are assessed under section 503(b), provides that "[t]he term 'willful,' when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter . . . ." 47 U.S.C. § 312(f)(1). Section 312(f)(2) of the Act, which also applies to violations for which forfeitures are assessed under section 503(b), provides that "[t]he term 'repeated,' when used with reference to the commission or omission of any act, means the commission or omission of such act more than once, or, if such commission or omission is continuous, for more than one day." 47 U.S.C. § 312(f)(2).

11. As relevant here, no forfeiture penalty shall be imposed against a person by the FCC unless and until

>(A) the Commission issues a notice of apparent liability, in writing, with respect to such person;
>(B) such notice has been received by such person, or until the Commission 4 has sent such notice to the last known address of such person, by registered or certified mail; and
>(C) such person is granted an opportunity to show, in writing . . . why no such forfeiture penalty should be imposed.

47 U.S.C. § 503(b)(4).

12. Pursuant to section 503(b)(2)(E) of the Act, 47 U.S.C. § 503(b)(2)(E), in determining the amount of a forfeiture penalty, the FCC "shall take into account the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require."

13. Section 1.80 of the FCC's Rules provides the amounts of forfeiture penalties which the FCC may impose for violations. 47 C.F.R. § 1.80. The FCC has also issued its *Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, 12 FCC Rec. 17087 (1997), *recons. denied*, 15 FCC Rec. 303 (1999). Section 1.80(b) sets a base forfeiture of $10,000 for operation without an instrument of authorization. Section 1.80(b) and the *Forfeiture Guidelines* allow the FCC to adjust a forfeiture upward for violations that are egregious, intentional, or repeated, or that cause substantial harm or generate substantial economic gain for the violator.

14. The FCC's forfeiture penalties are "payable into the Treasury of the United States" and are "recoverable . . . in a civil suit in the name of the United States[.]" 47 U.S.C. § 504(a).

## THE VIOLATIONS AND NOTICE OF APPARENT LIABILITY

15. On October 17, 2015 the Commission received a complaint from the licensee of an FM translator station located in Jersey City, New Jersey, alleging that an unauthorized station was causing co-channel interference on 97.5 MHz.

16. On November 17, 2015, two agents from the Commission's New York Field Office (New York Office) used direction finding techniques to trace the source of the interfering signal on 97.5 MHz to a residential building located in Paterson, New Jersey (First Site). The agents observed an FM broadcast antenna mounted on the roof of the First Site and recorded a portion of the station's audio stream in which the announcer identified the station as "Big Link Radio" and announced a telephone number that listeners could use to reach the station's studio (Call-In Number).

17. The agents took field strength measurements of the station's signal and determined that the transmissions on 97.5 MHz exceeded the limits for operation under Part 15 of the Commission's rules (Rules), and therefore required a license. The agents consulted the Commission's records and confirmed that the FCC had not authorized an FM broadcast station to operate on 97.5 MHz at or near the First Site.

18. The agents consulted the online property tax records of Paterson, New Jersey and determined that the owner of the First Site property was Mantari Investments LLC (Mantari). The agents issued Mantari a Notice of Unlicensed Operation (NOUO), dated December 2, 2015. The NOUO informed Mantari that an unlicensed radio station was operating at 97.5 MHz at the First Site and warned it that continued unlicensed operations could result in additional enforcement action.

19. On January 20, 2016, agents from the New York Office confirmed that the unlicensed broadcast station was no longer operating on 97.5 MHz from the First Site.

20. On May 9, 2016, the Commission received a new complaint that an unlicensed station, identifying itself as WBLR, was operating on 97.5 MHz in Paterson, New Jersey.

21. On May 10, 2016, an agent from the New York Office used direction finding techniques to trace the source of the signal on 97.5 MHz to the First Site. The agent recorded a portion of the station's audio in which the announcer identified the station as "WBLR – Big Link Radio 97.5 FM." The agent took field strength measurements of the station's signal and determined that the transmissions on 97.5 MHz exceeded the limits for operation under Part 15 of the Rules and therefore required a license.

22. The agent consulted the Commission's records and confirmed that the FCC had not authorized an FM broadcast station to operate on 97.5 MHz at or near the First Site.

23. On May 17, 2016, the agent from the New York Office returned to the First Site and spoke with building maintenance personnel, who accompanied the agent to the building's roof, where the agent observed an FM broadcast antenna with coaxial cable that ran to an apartment within the First Site. The building maintenance personnel confirmed that a radio station operated from that apartment. Upon interviewing another tenant at the First Site, the agent confirmed that Defendant and one of Defendant's relatives occupied the apartment and operated a radio station from that location.

24 On May 23, 2016, the New York Office sent Defendant a NOUO (Dawson NOUO) informing him that an unlicensed radio station was operating at 97.5 MHz at the First Site and warning him that continued unlicensed operations could result in additional enforcement action. That same day, the New York Office also sent Mantari a second NOUO.

25. On May 31, 2016, a representative of Mantari contacted the New York Office, confirmed that Defendant was operating a station from the First Site, and stated that Mantari had requested that Defendant remove the FM broadcast antenna from the First Site.

26. On June 1, 2016, Defendant contacted the New York Office and spoke with an agent, who advised Defendant that he needed a license to operate an FM broadcast station on 97.5 MHz in Paterson, New Jersey and continued unlicensed operations could result in additional enforcement actions. Defendant stated that he had

applied for an FCC license to operate the station, but he did not provide the agent with more information about the purported application. Defendant then told the agent that he would remove the transmission equipment from his apartment. Following the conversation with Defendant, the agent reviewed the FCC's licensing databases and did not find evidence of Defendant having applied for a broadcast license.

27. On June 6, 2016, a representative from Mantari contacted the New York Office and confirmed the removal of the FM broadcast antenna from the First Site.

28. On July 6, 2016, the New York Office received a complaint alleging that an unlicensed station was operating on 97.5 MHz in Paterson, New Jersey.

29. On August 2, 2016, an agent from the New York Office used direction finding techniques to trace the source of the interfering signal on 97.5 MHz to a different residential building in Paterson, New Jersey (Second Site). The agent observed an FM broadcast antenna mounted on the roof of the Second Site and recorded a portion of the station's audio stream, during which the announcer identified the station as "WBLR – Big Link Radio" and publicized the Call-In Number as a way to contact the station's studio.

30. The agent took field strength measurements of the station's signal and determined that the transmissions on 97.5 MHz exceeded the limits for operation under Part 15 of the Rules, and therefore required a license. The agent consulted the Commission's records and confirmed that the FCC had not authorized an FM broadcast station to operate on 97.5 MHz at or near the Second Site. The agent then posted a Notice of Unlicensed Radio Operation on the front door of the Second Site.

31. On August 9, 2016, the agent from the New York Office returned to the Second Site to determine whether the unlicensed station was still broadcasting. At the Second Site, the agent observed that the unlicensed station remained on the air and that an FM broadcast antenna was still present on the building's roof. After further observation, the agent concluded that the unlicensed station was no longer operating from the Second Site. The agent then used direction finding techniques to trace the source of the unlicensed signal on 97.5 MHz to a possible location in Paterson, New Jersey. However, before the agent was able to establish the station's precise location, the station was taken off the air. While the station was on the air, the agent recorded a portion of the station's audio stream, in which the announcer identified the station as "WBLR – Big Link Radio."

32. On August 17, 2016, the agent returned to the Second Site and observed that the FM broadcast antenna remained on the building's roof but that the unlicensed station was operating from a different location. Using direction finding techniques, the agent traced the source of the transmissions to a single-family dwelling in Paterson, New Jersey (Third Site). The agent observed the presence of an FM broadcast antenna in a tree at the Third Site and recorded a portion of the station's audio, in which the announcer identified the station as "WBLR – Big Link Radio."

33. The agent took field strength measurements of the station's signal and determined that the transmissions on 97.5 MHz exceeded the limits for operation under Part 15 of the Rules, and therefore required a license. The agent consulted the Commission's records and confirmed that the FCC had not authorized an FM broadcast station to operate on 97.5 MHz at or near the Third Site.

34. On or about January 12, 2017, the FCC issued a Notice of Apparent Liability for Forfeiture (NAL) to Defendant for a monetary forfeiture of $25,000 for willfully and repeatedly violating Section 301 of the Act by operating an unlicensed radio station on 97.5 MHz in Paterson, New Jersey. The $25,000 penalty comprises a base forfeiture amount of $10,000 for operation without a license on May 10, 2016 and an additional $10,000 for operation without a license between August 2-17, 2016; and an upward adjustment of $5,000 for the repeated operation of an unlicensed station after receiving notice that his action violated the Act, Rules, and related Commission orders, demonstrating a deliberate disregard for the FCC's authority and requirements. The NAL ordered Defendant to pay the full amount of the proposed forfeiture, or to file a written statement seeking reduction or cancellation of the proposed forfeiture, within 30 days of the date of the NAL.

35. The FCC sent a copy of the NAL by Certified Mail on January 12, 2017, to Defendant's address, 83 Sussex Street, Floor 1, Hackensack NJ, 07601. A copy of the NAL is attached as Exhibit A. On January 20, 2017, the certified mail receipt was signed and returned to the FCC.

36. On February 13, 2017, Defendant submitted a response to the NAL. Defendant sought cancelation of the NAL. He claimed that he was not the operator of the station transmitting on 97.5 MHz in Paterson, New Jersey, and stated in his NAL Response that he "only did the Internet" and did not "place any antenna on any site." Defendant further asserted that he had "no connection, location or agreement with anyone to rebroadcast our Internet feed," and that he tried to convince unnamed third-parties who allegedly broadcast Big Link Radio to refrain from doing so. Defendant faulted the New

York Office for failing to reach out to him directly before issuing the NAL. A copy of the Response is attached as Exhibit B.

## THE FORFEITURE ORDER

37. On or about June 19, 2017, the FCC issued a Forfeiture Order in the amount of $25,000 to Defendant for willfully and repeatedly violating Section 301 for operating an unlicensed radio station on 97.5 MHz in Paterson, New Jersey. The Forfeiture Order directed Defendant to pay the forfeiture penalty in thirty days. The FCC sent a copy of the Forfeiture Order to Defendant by UPS Next Day Air to his address. A copy of the Forfeiture Order is attached as Exhibit C.

## CLAIM FOR RELIEF

38. Plaintiff adopts and incorporates each allegation set forth in Paragraphs 1 through 37 above.

39. Defendant willfully and repeatedly violated Section 301 by operating an unlicensed radio station on 97.5 MHz in Paterson, New Jersey.

40. By reason of the foregoing, Defendant is liable to the United States for the forfeiture amount of $25,000 pursuant to 47 U.S.C. § 503(b), section 1.80 of the FCC's Rules, 47 C.F.R. § 1.80, and the FCC's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines, 12 FCC Rcd 17087 (1997), *recons. denied*, 15 FCC Rcd 303 (1999). The Certificate of Forfeiture is attached hereto as Exhibit D.

41. Demand has been made upon Defendant by Plaintiff for the sum due, but the amount due remains unpaid.

WHEREFORE, Plaintiff prays for judgment against Defendant for the total of $25,000, plus costs. Plaintiff further demands, pursuant to 28 U.S.C § 1961, that interest on the judgment be at the legal rate until paid in full.

        United States of America by and through
        Its specially assigned counsel
        KML Law Group, P.C.

        <u>/s/Rebecca A. Solarz, Esq.</u>
        Rebecca A. Solarz, Esquire
        701 Market Street, Suite 5000
        Philadelphia, PA 19106
        Phone: 215-825-6327
        RSolarz@kmllawgroup.com